UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MARY ANGELA JOHNSON, | ) |
| Claimant, | ) |
| vs. | ) Civil Action No. 2:17-cv-1019-CLS |
| NANCY A. BERRYHILL, Acting Commissioner, Social Security Administration, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Claimant, Mary Angela Johnson, who is proceeding *pro se*, commenced this action on June 19, 2017, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge, and thereby denying her claim for a period of disability and disability insurance benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be affirmed.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253

(11th Cir. 1983).

Briefs are not required from *pro se* parties in Social Security appeal cases,[1] and claimant did not file a supporting brief. Nevertheless, this court has carefully reviewed the entire record in reaching its determination of the merits of claimant's appeal.

Claimant alleged that she became disabled on June 26, 2013, as a result of fibromyalgia, bilateral cubital tunnel syndrome, carpal tunnel syndrome, post traumatic stress disorder, depression, and anxiety.[2] The ALJ found that claimant suffered from the severe impairments of affective and anxiety disorder, and a history of cubital tunnel syndrome with cubital tunnel release times two.[3] Even so, she found that claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.[4] Moreover, claimant retained the residual functional capacity

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is capable of understanding and carrying out simple work instructions but not detailed or complex work instructions. She is able to maintain attention and concentration for two-hour blocks of time with normal breaks during an 8-hour day.

---

[1] *See* doc. no. 8 (briefing letter), at 1 ("*Unless plaintiff is proceeding without counsel*, initial briefs will be required of all parties.") (emphasis supplied).

[2] Tr. 220.

[3] Tr. 13.

[4] Tr. 15.

> She is able to adapt to workplace changes if they are infrequent and introduced gradually. She is limited to occasional interaction with the general public and frequent interaction with coworkers and supervisors. The claimant is limited to frequent, as opposed to constant, reaching and fingering.

Tr. 16. The ALJ then relied upon vocational expert testimony to determine that a person of claimant's age, education, work experience, and residual functional capacity could perform jobs that exist in significant numbers in the national economy.[5] Accordingly, the ALJ found that claimant was not under a disability, as defined by the Social Security Act, at any time between June 26, 2013, her alleged onset date, and June 30, 2013, her date last insured.[6]

The Appeals Council reviewed the ALJ's decision and found that claimant's insured status actually extended through June 30, 2014, not June 30, 2013. After examining the "unadjudicated period from July 1, 2013 through June 30, 2014," the Appeals Council found:

> The evidence of record indicates that there was no change in circumstances or additional medical evidence, which would warrant a different determination regarding your disability through the unadjudicated period. Therefore, we plan to make a decision that adopts the Administrative Law Judge's decision, finding that you are not disabled through June 30, 2014, your date last insured.

Tr. 26. The Appeals Council issued that decision, which now serves as the final

---

[5] Tr. 28.
[6] Tr. 19.

decision of the Commissioner, on April 27, 2017.[7]

Upon review of the entire record, the court concludes that the Commissioner's decision was supported by substantial evidence and in accordance with applicable law. The ALJ stated that claimant experienced affective and disorders as a result of a past rape, but she noted that claimant consistently had negative mental status examinations, and that the record showed no limitations in claimant's mental functioning. Even so, as a result of claimant's report that she was isolated and hypervigilant, the ALJ found that claimant was "unable to understand and carry out detailed or complex work instructions. She can adapt to workplace changes if they are infrequent and introduced gradually. She is limited to frequent interaction with coworkers and supervisors, and to occasional interaction with the general public."[8] Those findings are consistent with the medical record. Claimant's primary care provider from Cooper Green Mercy Hospital noted on December 3, 2013, that claimant was fully oriented and cooperative, and stated on February 6, 2014, that claimant demonstrated normal mood and affect.[9] A psychiatrist from Alabama Psychiatric Services, P.C., observed the following during a March 10, 2014 examination:

---

[7] Tr. 1-7.
[8] Tr. 17.
[9] Tr. 13.

> She is alert and fully oriented. She engages well and is cooperative throughout the interview. She has no psychomotor disturbance. Her mood is depressed and her affect is congruent and fully reactive. Her thought process is linear, logical, and goal-directed. Her memory is grossly intact. Her attention span is satisfactory. Her speech is normal in rate, tone, volume, and prosody. She is having no delusions, hallucinations, obsessions, compulsions, or homicidal ideation. She endorses intermittent suicidal ideations without intent and without specific plan as per the history of present illness. She endorses having hope that she will do better with engagement in treatment.

Tr. 506. The psychiatrist assessed claimant with major depressive disorder, recurrent, severe, without psychotic features, and posttraumatic stress disorder. He assigned a GAF score of 65, representing mild symptoms.[10] He also prescribed medication and recommended counseling. Claimant reported some improvement in her sleep and crying spells by her follow-up appointment on April 10, 2014. She had chosen not to undergo counseling due to a lack of finances. She exhibited good hygiene, normal psychomotor activity, depressed mood, rigid affect, fluent speech, no hallucinations, rational thought processing, good concentration, normal thought content, vague suicidal ideations with no plan, cooperative attitude, fair judgment and insight, impaired memory, and full orientation. Her medication dosage was increased.[11]

Claimant also sought treatment at Pitts & Associates Psychiatry on March 13, 2014. She reported depression, PTSD, and panic attacks. She stated that she did not

---

[10] Tr. 506.
[11] Tr. 508.

5

like to go out, that she experienced daily crying spells, and that she was unable to apply for dental school as a result of a previous arrest. The mental status examination revealed casual appearance, pressured speech, depressed and anxious mood, normal affect, concrete thinking, memory-and concentration-impaired cognition, vague suicidal ideations with no plan, no homicidal ideation, and no hallucinations. Claimant was assessed with depression, anxiety disorder, and PTSD, and she was assigned a GAF score of 69, again indicating mild symptoms. Similar findings were noted on April 3, 2014.[12]

Additionally, Jon G. Rogers, Ph.D., the consultative psychologist, examined claimant on November 13, 2013. Claimant reported symptoms of depression and anxiety, and problems with interpersonal relationships. On examination, claimant was alert but tearful and emotional. She exhibited average motor activity, unremarkable physical appearance, cooperative attitude, spontaneous speech, normal articulation and conversation, labile affect, depressed and anxious mood, and good orientation. She could not perform the serial 7's subtraction task, but she could spell the word "world" backward, and she answered all math problems correctly. She was able to repeat seven digits forward and four digits backward, and to recall three objects after five minutes. She could recall her previous day's activities, as well as

---

[12] Tr. 499-503.

the birthdays of family members and her own age at high school graduation. Her fund of information, abstract thinking skills, and thought processes were good, but she did report feeling that one of her neighbors was "out to get her." Her judgment and insight were fair. She reported still experiencing flashbacks, nightmares, and lack of trust as a result of prior abuse. Dr. Rogers found that claimant was able to function independently, and that the quality of her daily activities was normal. He assessed claimant as experiencing posttraumatic stress disorder, depressive disorder, and pain disorder, and he assigned a GAF score of 51, representing moderate symptoms. Dr. Rogers also stated that the extent of claimant's mental impairment was moderate. Her ability to understand, remember, and carry out instructions would be mildly impaired, and her ability to respond appropriately to supervision, coworkers, and work pressures in a work setting would be moderately impaired.[13]

The psychological evidence of record supports neither the imposition of functional limitations greater than those assessed by the ALJ, nor a finding of disability under the Listings. Accordingly, the ALJ's findings about claimant's psychological impairments were supported by substantial evidence.

With regard to claimant's physical limitations, the ALJ limited claimant to frequent (as opposed to constant) fingering and reaching to account for her problems

---

[13] Tr. 489-95.

with her hands, even though "objective examinations reveal no physical limitations, including in fine and gross manipulation."[14]  The record does not support a need to assess any greater limitations.  Claimant underwent successful cubital tunnel release surgery in early 2011.[15]  More recent examinations between December 2013 and February 2015 revealed normal physical findings, including full range of motion in all extremities.[16]

The physical consultative examination conducted by Dr. Ashley Holdridge on November 2, 2013 resulted in similar findings.  Claimant complained to Dr. Holdridge of fibromyalgia and cubital tunnel syndrome.  She reported being able to perform daily activities like cooking, dishes, laundry, and child care, but not as quickly as she used to.  The physical examination revealed tenderness to palpation over the ulnar nerve at the elbow, but no tender points consistent with fibromyalgia.  She had normal range of motion, full grip strength, and good ability to manipulate with her hands.  In fact, every other aspect of the neurological examination of claimant's hands was normal.  Dr. Holdridge assessed claimant with ulnar neuropathy, status post surgery, but she did not impose any limitations on sitting, walking, standing, lifting, carrying, fine and gross manipulation, or workplace

---

[14] Tr. 17.
[15] Tr. 426.
[16] Tr. 497, 513, 516, 528-29.

environmental exposure.[17]

Without any evidence to support functional limitations greater than those imposed by the ALJ, the decisions of the ALJ and the Appeals Council must stand. The decision of the Commissioner is AFFIRMED because it was based upon substantial evidence and in accordance with applicable legal standards. Costs are taxed against claimant. The Clerk is directed to close this file.

DONE this 11th day of May, 2018.

_____
United States District Judge

---

[17] Tr. 483-87.